ACCEPTED
15-25-00076-cv
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
10/13/2025 10:00 AM
CHRISTOPHER A. PRINE
CLERK

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
10/13/2025 10:00:41 AM
CHRISTOPHER A. PRINE
Clerk

No. 15-25-00076-CV

IN THE COURT OF APPEALS FOR THE
FIFTEENTH JUDICIAL DISTRICT OF TEXAS

---

In the Matter of the Marriage of
Terry Brent Williams and Tracy Leann Williams
and in the interest of P.R.W., a child

---

Brief of Appellee
Tracy Leann Williams

On appeal from judgment
in cause number 22-00059CV
in the 369th District Court
Leon County, Texas
Hon. C. Michael Davis, Presiding

ORAL ARGUMENT NOT REQUESTED

Clint F. Sare
Texas Bar No. 00788354
P.O. Box 1694
Bryan, Texas 77806
(979) 822-1505
cfs@sarelaw.com
Counsel for Tracy Leann Williams

## IDENTITY OF PARTIES AND COUNSEL

In accordance with Rule 38.2(a)((1)(A), Appellee provides the following correction to Appellant's statement of parties and counsel.


Appellee: Tracy Leann[1] Williams

Appellate Counsel: Clint F. Sare[2]
Law Office of Clint F. Sare
P.O. Box 1694
Bryan, TX 77806
(979) 822-1505
cfs@sarelaw.com

---

[1] Appellant's brief misspells Appellant's name.
[2] Appellee's counsel had filed his appearance and designation as lead counsel April 25, 2025.

# TABLE OF CONTENTS

Identity of Parties and Counsel .................................................................. ii

Table of Contents ................................................................................... iii

Index of Authorities ................................................................................ v

Statement of the Case.............................................................................. 1

Statement Regarding Oral Argument......................................................... 1

Reply Issues Presented............................................................................ 2

Statement of Facts .................................................................................. 3

    Evidence was Heard in September 2024 ........................................... 3
    Orders for Sale of Community Property and Appellant's Compliance........... 4
    The Final Hearing and Disposition ................................................... 6
    The Trial Court's Division.............................................................. 7
    Child Support Evidence ................................................................ 8
    Post-Judgment Proceedings ........................................................... 11

Summary of the Argument......................................................................... 12

Argument .............................................................................................. 14

Reply Issue 1.  The record supports the finding that Appellant was intentionally underemployed at the time of the final hearing. ................................................ 14

Reply Issue 2.  The trial court did not deviate from the child support guidelines. ............................................................................................... 16

Reply Issue 3.  Appellant's third issue is not preserved for review, but even if it was, the record supports a finding Appellant agreed to the separate property reimbursement....................................................................................... 18

    The Partial Record Requires a Presumption in Favor of the Judgment......... 18
    Appellant has Not Preserved Any Error ........................................... 19
    Appellant has not Established a Different Separate Interest......................... 20

Reply Issue 4.  Appellant's fourth issue rests on the mistaken premise the trial court valued 10.8 acres at $20,000.................................................................. 22

Reply Issue 5.  The record supports the trial court's division of the personal property. ............................................................................................... 23

The Skid-steer loader ...................................................................... 24

Kubota Tractor ................................................................................. 25

The Shop Door ................................................................................. 26

Reply Issue 6.   Appellant presented no evidence the trial court divested him of any separate property welding equipment. ....................................................... 27

Reply Issue 7.   The trial court did not abuse its discretion in awarding attorney's fees to Appellee. ................................................................... 30

Prayer for Relief ...................................................................................... 32

Certificate of Compliance ........................................................................ 33

with Brief limitations and Service ........................................................... 33

# INDEX OF AUTHORITIES

**Cases**

*Bennett v. Cochran*, 96 S.W.3d 227, (Tex. 2002)...................................................... 19

*City of Keller v. Wilson*, 168 S.W.3d  802 (Tex. 2005) ......................................... 29

*Gerami v. Gerami*, 666 S.W. 2d 241 (Tex.App.—Houston [14th Dist.] 1984, no writ). ......................................................................................................................... 23

*Gonzalez v Gonzalez*, No. 04-23-00066-CV (Tex.App.—San Antonio, April 16, 2025, no pet.) .......................................................................................................... 29

*Richards v. Schion*, 969 S.W.2d 131 (Tex.App.-Houston [1st Dist.] 1998, no pet.) ...................................................................................................................... 19, 25

*Smith v. Smith*, 22 S.W.3d 140 (Tex.App.—Houston [14th Dist.] 2000, no pet.) 15, 20

**Statutes**

Tex. Fam. Code §154.066 ............................................................................. 14, 15, 17

Tex. Fam. Code §154.130 ..................................................................................... 17

Tex. Fam. Code §3.001 .......................................................................................... 26

Tex. Fam. Code §3.003 ..................................................................................... 25, 26

Tex. Fam. Code §3.402 .......................................................................................... 21

**Rules**

Tex. R. App. Proc. 33.1........................................................................................ passim

Tex. R. App. Proc. 34.6................................................................................... 12, 18

Tex. R. App. Proc. 38.2.................................................................................... ii, 1, 3

Tex. R. Civ. Proc. 298............................................................................................ 15

## STATEMENT OF THE CASE

Pursuant to Rule of Appellate Procedure 38.2(a)(1)(B) Appellee disagrees with portions of Appellant's Statement of the Case.

Appellant's brief recites that the first hearing occurred on October 31, 2024. That is incorrect. The clerk's record reflects the trial court conducted its initial hearing on the merits of the case on September 24, 2024. This hearing, including testimony on the merits, is shown in the court's docket sheet. (CR 177). It is also the date the trial court granted the divorce and ordered the sale of personal property. Appellant simply omitted that hearing from his request for preparation of the appellate record. (CR 192).

## STATEMENT REGARDING ORAL ARGUMENT

Appellee believes the issues raised by Appellant can be resolved by the application of well-established rules. The record is sufficient for the Court to apply those rules and oral argument would not materially aid the court in disposition of the appeal. In the event the Court grants Appellant's request for oral argument, Appellee will appear and present oral argument.

# REPLY ISSUES PRESENTED

**Reply Issue 1.** **The record supports the finding that Appellant was intentionally underemployed at the time of the final hearing.**

**Reply Issue 2. The trial court did not deviate from the child support guidelines.**

**Reply Issue 3.** **Appellant's third issue is not preserved for review, but even if it was the record supports a finding Appellant agreed to the separate property reimbursement.**

**Reply Issue 4. Appellant's fourth issue rests on the mistaken premise the trial court valued 10.8 acres at $20,000**

**Reply Issue 5.** **The record supports the trial court's division of the personal property.**

**Reply Issue 6.** **Appellant presented no evidence the trial court divested him of separate property welding equipment.**

**Reply Issue 7.** **The trial court did not abuse its discretion in awarding recovery of attorney's fees to Appellee.**

**STATEMENT OF FACTS**

In accordance with Rule of Appellate Procedure 38.2(a)(1)(B), Appellee provides the following statement of facts to correct and supplement the statement in Appellant's brief.

Appellant correctly recites that the parties were married in September 2011. (CR 198, finding 1). Appellant filed the divorce petition initiating this litigation in March 2022. (CR 5).

*Evidence was Heard in September 2024*

The trial court conducted an evidentiary hearing on September 25, 2024. (CR 177). A transcription of that hearing does not appear in the record because Appellant chose not to request that it be transcribed. (CR 192). He only requested a record of the hearings held December 6, 2024, and February 25, 2025. (CR 192). The clerk's record, however, reflects the September 2024 hearing. The trial court's docket sheet contains the notation that "husband testified to property division only – on cross exam, reached agreement on nature of most of the CP in marital estate." (CR 177). The trial court's order for the sale of personal property and appointment of a receiver was based on evidence from that hearing. (CR 74). The trial court described the testimony at the September 2024 hearing at a subsequent hearing. (3 RR 11). It was also at the September 2024 hearing that the court granted the divorce. (CR 177).

3

In spite of the significance of that hearing, Appellant excluded it from his request. (CR 192).

*Orders for Sale of Community Property and Appellant's Compliance*

The next hearing was in October 2024.[3] The trial court conducted that hearing to determine why the property had not been sold. The court approved the sale of the real property, totaling approximately 43 acres. (2 RR 2). The court also set out the procedures to be used for the sale of personal property (2 RR 3-5) and signed an order for the sale listing 19 specific items[4] to be delivered to the receiver Hunter Warren. (CR 74).

About a month later Mr. Warren submitted a report describing the property that had, and had not, been delivered to him and the condition of the property. (CR 78). The report showed that the item described in exhibit 6, a skid-steer loader, was delivered without the bucket and that it would cost $1,000 to replace. Two other skid steer attachments with a value of $3,500 were not delivered. (CR 78).

The report showed a trailer identified in exhibit 8 with a value of $2,500 was not delivered to Mr. Warren. (CR 79). A tractor that was delivered had

---

[3] Although not part of Appellant's request for the reporter's record, a record of this hearing does appear in volume 2 of that record.

[4] The order identified the property by exhibit numbers which were apparently from the September 2024 hearing.

4

the front loader, with a value of $3,000, removed before it was delivered to him. Removal of the loader caused the attached mower to malfunction with a repair cost between $500 and $1,000. (CR 79). A four-wheeler depicted in exhibit 12 was not delivered. (CR 80).

Exhibit 14 described a Dodge welding truck. When it was delivered it had different tires in poor condition. It would cost $1,200 to replace the tires. Welding equipment shown in exhibit 14, including leads, a reel, gas bottles, and gauges were removed from the truck and not delivered to the receiver. (CR 80). The missing items had a value of $1,000. (*Id.*).

The report showed a second Dodge truck identified in exhibit 18 was not delivered to the receiver. (CR 81). A third Dodge truck identified in exhibit 20 was delivered without some of its wheels and tires. (CR 82). A shop door with a value of $800 was not delivered to the receiver. (CR 83).

The next hearing was a status hearing held December 6, 2024. (3 RR 4). The court accepted the receiver's report that the proceeds of the sale of personal property were $50,400. (3 RR 2). The court approved his expenses of $322.69. The court approved the agreement to list the approximately 44 acres of real property for $10,000 per acre. (3 RR 3). Even though the suit had been pending since March of 2022, Appellant had not provided any tax returns telling the court: "I did not realize that I had to have my tax returns."

(3 RR 8-9). The judge admonished Appellant he was "not going to like the way its going to turn out" if he did not "do what you're suppose to do." (3 RR 9).

The trial court signed an order approving sale of the real property for not less than $10,000 per acre. (CR 102).

*The Final Hearing and Disposition*

At the final hearing conducted in February 2025, the personal property receiver Hunter Warren testified. (4 RR 2). Tracking his prior report, Mr. Warren described the personal property that was delivered, the missing and altered items, and the difference in value from what was originally listed. (4 RR 4-6). The value of the property that was missing or altered before delivery totaled $12,800. (4 RR 6). There was no cross-examination of him. The court approved payment to the receiver of 10 percent of the total proceeds and his expenses. (4 RR 6). That left proceeds for division of $45,047.00. (4 RR 7).

At that hearing the parties recited their agreement concerning conservatorship and health insurance. (4 RR 8-9). Appellee testified to the cost of the minor child's braces and the agreement that cost be divided. (4 RR 10). She also testified to the agreement that, on the sale of the real property, Appellant would "receive $20,000 for his portion of that separate property." (4 RR 12). Appellant made no objection.

6

She also testified to her attorney's fees of $8,018.15. (4 RR 14). The supporting records were admitted without objection. (4 RR 15).

The trial court heard evidence that the receiver had entered a contract for the sale of the remaining 43 acres of real property for $428,000.00. (4 RR 17; Ex. 7). For an undisclosed reason that sale had not closed at the time of the final hearing. Appellant's counsel conducted no cross examination of Appellee. (4 RR 19).

*The Trial Court's Division*

At the conclusion of testimony concerning the community property the trial court made detailed findings with regard to the division. He began by dividing the proceeds of the sales equally, then deducted $12,800 from Appellant's portion for the items that were not delivered, or had been altered by Appellant. (4 RR 20). From that he awarded Appellee one half the cost Appellee had incurred for the child's braces. (4 RR 20). Because Appellant wanted the camper rather than proceeds of a sale, the court awarded it to him and gave Appellee one half the value of the camper for her interest in it. (*Id*.).

The community property mower had a lien of $2,200 solely in Appellee's name. (4 RR 16). There was an agreement to divide that debt so the court awarded her $1,100 to implement that agreement. (4 RR 20).

The court also confirmed that Appellant be paid $20,000 "off the top" when the real property sold with the remaining proceeds to be divided equally. (4 RR 20-21).  Again, Appellant made no objection. (*Id*.).

*Child Support Evidence*

After division of the community property, Appellant testified on the issue of support. (4 RR 21).  At the time he filed suit he was self-employed. (*Id*).  He continued to be self-employed through 2023 while the case was proceeding.  IRS 1099 forms issued to him from that year reflected income of "around $140,000." (4 RR 26).  He denied that reflected his income, but produced no tax return showing expenses and net income. (*Id*.)

In 2024, after two years of litigation, Appellant shut down that business and became an employee of Harris Rebar at $18.50 per hour, saying he wanted to "try something different." (4 RR 22-23). Within a year he took another job making $30.00 per hour. (4 RR 23).  That job ended weeks before the final hearing.  (4 RR 24).  At the time of the final hearing he said he was looking for work and denied he was intentionally unemployed. (4 RR 28).

Appellant had not paid any support during the course of the proceeding. (4 RR 40).  There was a dispute over whether support had been ordered. Appellant also testified about conservatorship, seeking possession every other

8

week to match the times when his fiancé's children would be at their home. (4 RR 28).

Although the trial court had made a disposition of the personal property proceeds without objection, Appellant was also permitted to testify about that property. (4 RR 29). He denied knowing the order to deliver the skid-steer applied to its bucket, forks, and grapple. (4 RR 30). He admitted to still having those items (4 RR 34-35) but had made no offer to deliver those to alter the court's division.

He testified to changing the welding truck tires because "it had a bulge on the tire." (4 RR 30). He did not explain why *all* of the tires were changed from the type that had been on the truck to street tires.

He admitted to removing the loader from the Kubota tractor saying the loader "wasn't in the picture or the paperwork." (4 RR 30). He admitted it had been put on the tractor the previous summer. (*Id*.). The previous summer was during the marriage, and during the divorce proceeding.

With regard to the "$20,000 as separate property offset" for his interest in the real property, his testimony was that he understood the finding. (4 RR 31). He did not deny the existence of an agreement to that amount or present any objection or evidence his separate property interest was higher.

On cross-examination, he admitted that many of the personal property items were purchased from the receiver by someone he knew. (4 RR 34). Appellant also admitted that his stepfather had provided funds for the purchase of at least the Kubota tractor. (4 RR 35). Appellant admitted that the day the court ordered the personal property sold, the welding equipment was on the truck. (4 RR 39). He also denied thinking about whether removing the equipment would violate the court's orders. (4 RR 38).

The hearing concluded with the trial court repeating his disposition of the personal property sale proceeds, the division of the real property proceeds when sold, ordered back child support from October 1st to February 1st, and that amount would be deducted of disbursement of the sale proceeds. (4 RR 43).

The court also awarded to appellee her attorney's fees and recited the basis for doing so. (4 RR 44). The court set support based on income when Appellant was self-employed starting March 1, 2025. (4 RR 44-45).

After the hearing, but before the written judgment, the real property was sold for $440,250.00. (CR 107). The parties agreed to an order approving payment of the relator with the balance of $386,123.14 to the registry of the court. (CR 108).

The court signed the final decree on March 18, 2025. (CR 110). It named the parents joint managing conservators with Appellee having the right to determine the child's residence. (CR 116). Conservatorship was governed by a standard possession order. (CR 120). It ordered child support in accordance with the child support guidelines, with support payments retroactive to October 1, 2024. (CR 132-33; CR 199).

The decree contained specific findings concerning the alteration of personal property ordered to be delivered for sale, and the effect on the court's division of proceeds. (CR 161-64).

In accordance with the prior rendition, the judgment awarded Appellant $20,000.00 leaving community property proceeds of $365,935.33. (CR 164-65). After deducting attorney's fees and back child support from the portion to Appellant, he received $163,341.92 from the court's registry. (CR 165-66). Each party was to bear their own court costs. (CR 172).

*Post-Judgment Proceedings*

Appellant did not file any motion for new trial. He did file a request for findings of fact and conclusions of law. (CR 186). Those were filed April 21, 2025. (CR 198). Those included findings that Appellant's net monthly resources were $8,790.60 (Finding 10), the support ordered was in accordance with the guidelines (Finding 11), Appellant "interfered with the court's order"

concerning delivery of six items of personal property (Finding 15), that interference reduced the personal property subject to sale by $12,800 (Finding 16), and that Appellant agree his separate property interest was $20,000 (Finding 21). Appellant did not request amended or additional findings of fact or conclusions of law.

Appellant timely filed his notice of appeal. (CR 191).

## SUMMARY OF THE ARGUMENT

The appellate record is incomplete. Appellant's designation omitted the first evidentiary hearing in the case. (CR 192). Unless an appellant follows the procure set out in Rule of Appellate Procedure 34.6(c), a court is required to presume the omitted portion of the record supports the trial court's judgment. Appellant did not comply with Rule 34.6(c). The record supports the recited agreement on Appellant's separate property interest.

Beyond the presumption, it is fundamental that an appellate complaint must be preserved by a timely objection or request in the trial court. Tex. R. App. Proc. 33.1. Here Appellant failed to present any objection to trial court's award of reimbursement for his separate property interest in the land, or the court's determination that he failed to comply with the order to deliver personal property for sale, or that he was voluntarily underemployed. The

12

failure to present any objection in the trial court precludes his presentation of those complaints for the first time on appeal. Tex. R. App. Proc. 33.1.

It is also the rule that a party seeking to challenge a trial court's findings of fact and conclusions of law must object and request amended or additional findings and conclusions. Here, the trial court made findings as requested but Appellant did not request any amended or additional findings.

Even if Appellant's complaints survive his procedural failures, the evidence in the record supports the trial court's division of the marital estate as just and right under the facts presented. The evidence also supports the trial court's findings with regard to Appellant's net resources and application of the child support guidelines.

***Reply Issue 1. The record supports the finding that Appellant was intentionally underemployed at the time of the final hearing.***

Appellant's first issue is predicated on the mistaken premise that the trial court's child support order could only be based on his income, or lack of income, at the time of the final hearing. That is not the law.

*Appellant has Not Preserved his Complaint*

On Appellant's request the trial court made a finding of fact that his monthly net resources were $8,790.60. (CR 199). It also found that the support in accordance with the guidelines was $1,758.00 per month. (*Id.*). Appellant's brief admits $8,790.60 would be the correct net resources based on income of $140,000 per year,[5] he just challenges the evidentiary basis for the court's finding of his income.

The Texas Family Code provides:

> If the actual income of the obligor is significantly less than what the obligor could earn because of intentional unemployment or underemployment, the court may apply the support guidelines to the earning potential of the obligor.

Tex. Fam. Code § 154.066.

---

[5] Appellant' brief at 17.

The express finding that Appellant's monthly net resources of $8,790.60, implies a finding Appellant was intentionally unemployed or underemployed under section 154.066 and the court set support on his earning potential. At the conclusion of the hearing the trial court stated child support was set based on his self-employment income. (4 RR 44-45). Although not separately stated in the express findings of fact, it is implied that a court makes all findings necessary to support the judgment. *Smith v. Smith*, 22 S.W.3d 140, 149 (Tex.App.—Houston [14th Dist.] 2000, no pet.). The failure of a party to request additional or amended findings waives the right to complain on appeal about the presumed finding. *Id*. Here Appellant requested no additional or amended findings under Rule of Civil Procedure 298. He has forfeited his right to complain about the implied finding.

*The Evidence Supports the Trial Court's Finding*

Even if Appellant's complaint was properly preserved, the evidence supports the trial court's implied finding that he was intentionally unemployed.

Appellant's argument is that he is not intentionally unemployed because he "would be receiving $460 per week from unemployment" and he could not get unemployment benefits if he had voluntarily quit or been fired

for cause.[6] The argument ignores the evidence concerning his self-employment and decision to abandon that income.

The evidence showed that the only reason Appellant was not continuing to earn the amount he was earning when he filed suit was his voluntary decision to "try something different." (4 RR 22-23). There was no evidence there was any external force which prevented him from continuing the lucrative self-employment work. He did not testify to any injury or loss of a license or any other impediment to his continued self-employment. Nor did he testify that when he lost his hourly employment that it was not possible to resume the self-employment work. The record supports the finding of net resources based on earning potential. Tex. Fam. Code § 154.066.

## Reply Issue 2. *The trial court did not deviate from the child support guidelines.*

Appellant's second issue rests on the mistaken premise that the trial court deviated from the child support guidelines. From that premise he reasons the trial court erred by not making findings of fact to support the deviation.

---

[6] Appellant's brief at 17, 19-20. Appellant improperly seeks to go outside the record to support his argument, citing to information from websites not ever raised in the trial court. The Court is bound by the record. Moreover, because he was not receiving unemployment, there was no basis for a finding that anyone found his unemployment involuntary.

Appellant contends that section 154.130 of the Family Code required the trial court to make findings of fact to support deviation from the child support guidelines.  For the reasons set out in reply issue one, the trial court did not deviate from the child support so Appellant's reliance on section 154.130 is misplaced.

As with his first issue, Appellant has failed to preserve his complaint for review.  *See*, Tex. R. App. Proc. 33.1(a).  Appellant did not make a written request for findings of fact under Section 154.130(a)(1).[7] He did not make an oral request during the hearing under section 154.130(a)(2).  Because the trial court did not deviate from the guidelines, he was not required to make findings under 154.130(a)(3).  Appellant *never argued* to the trial court that he had deviated from the support guidelines which would have given any notice that he thought findings were required under section 154.130(a)(3).  Making the argument for the first time on appeal is too late. Tex. R. App. Proc. 33.1(a).

Even if the Court reaches the merits of Appellant's second issue, the evidence supports the trial court's implied finding that Appellant was intentionally unemployed and the court did not err in applying the support guidelines in accordance with his earning potential under section 154.066.

---

[7] Under this provision the request must be made within 20 days of rendition and before the written judgment is signed.

17

***Reply Issue 3. Appellant's third issue is not preserved for review, but even if it was, the record supports a finding Appellant agreed to the separate property reimbursement.***

In his third issue Appellant presents two different complaints. The first is that he did not agree to the amount of reimbursement of his separate property interest in the real property. The second is that the trial court erred in "awarding the majority of the proceeds from the sale of his separate property to the community." He has failed to present a record supporting either argument. Even if preserved, they fail on the merits.

*The Partial Record Requires a Presumption in Favor of the Judgment*

As noted, Appellant did not request a record of all the evidence presented to the trial court. His request for preparation of the record omitted the first evidentiary hearing. (CR 177, 192). The Rules of Appellate Procedure permit a party to request a partial record. Tex. R. App. Proc. 34.6.(c). To avoid the presumption that the missing part of the record supports the trial court's judgment the party must follow the Rule's procedure which requires a timely statement of points or issues. Tex. R. App. Proc. 34.6(c)(1). If an appellant complies with the Rule, then the review court must presume the record is the entire record on the issues raised. Tex. R. App. Proc. 34.6(c)(1).

When an appellant requests a partial record and does *not* comply with Rule 34.6(c), "it creates the presumption that the omitted portions support the

18

trial court's findings." *Richards v. Schion*, 969 S.W.2d 131, 133 (Tex.App.-Houston [1st Dist.] 1998, no pet.). *See also Bennett v. Cochran*, 96 S.W.3d 227, 229 (Tex. 2002) (Citing *Richards* with approval). That is the circumstance here. Appellant requested a partial reporter's record by omitting an entire evidentiary hearing, but did not comply with Rule 34.6(c). Consequently, the Court must presume the omitted portions support the trial court's findings. That presumption is supported by the trial court's docket sheet reflecting that at the omitted hearing Appellant testified and that there was an agreement on the "nature"[8] of the property. (CR 177). It is also supported by the court's description of that hearing. (3 RR 11).

*Appellant has Not Preserved Any Error*

Even if the presumption from a partial record is not dispositive of Appellant's issue, he has failed to preserve his complaint by a timely objection to the trial court. Tex. R. App. Proc. 33.1(a).

During the evidentiary hearing Appellee testified to the agreement he would receive $20,000 for his separate property interest in the real property. (4 RR 12). Appellant presented no objection. When Appellant testified on the issue, he did not controvert the testimony there was an agreement or present

---

[8] From the context it is apparent the hearing addressed the characterization of property as community or separate.

19

any objection to the award of $20,000 for his separate property interest. (4 RR 30-31). He presented no evidence he had a greater separate property interest. Appellant's contention that his testimony was not an affirmative agreement ignores both Appellee's testimony there was, and the obligation under Rule 33.1 to present a timely objection.

The trial court made findings of fact that Appellant agreed to the value of his separate property interest (CR 200, finding 21). Appellant filed no request for amended or additional findings. This waives the ability to complain on appeal about the finding that was made. *See Smith*, 22 S.W.3d at 149.

*Appellant has not Established a Different Separate Interest*

In an attempt to support his argument that the record shows he had a separate property interest greater than $20,000, Appellant cites to one page of exhibit 3 entitled "Warranty deed with Vendor's Lien." He now contends that document shows he purchased the 10.8-acre tract before marriage for $127,645. While it shows the purchase was before the marriage, it actually shows that consideration for the deed was ten dollars and a $127,645 *promissory note,* not that Appellant had paid that amount.

That document shows that at the time of the deed Appellant's equity in the property was ten dollars. The deed was dated April 23, 2009. The parties

were married in September 2011. (CR 198). Appellant presented no evidence how much he paid on the note prior to the marriage. The partial record requires the inference that it was no more than $20,000. It also requires the inference that at the September 2024 hearing Appellant agreed to this interest.

Even if title to that portion of the land was Appellant's individually, the community estate had a right of reimbursement for community funds used to pay debt on separate property. Tex. Fam. Code § 3.402. The partial record requires the inference that payments on the note during the 13-year marriage were from community funds. Appellant's failure to present any evidence of payments on the note at the final hearing is consistent with the existence of an agreement on the issue.

Because the real property sold after the close of evidence but before the judgment, there is no closing statement in the record which would show the outstanding note at the time of the divorce. Appellant seeks to have the Court ignore the presumptions in favor of the judgment from the partial record, draw the contrary presumption that he had paid off the outstanding note in the two years prior to the marriage, and do so without any supporting evidence, that is in conflict with the record and the standards of appellate review. Appellant's third issue should be overruled.

***Reply Issue 4. Appellant's fourth issue rests on the mistaken premise the trial court valued 10.8 acres at $20,000.***

Appellant's fourth issue is a restatement of the complaint presented in his third issue and must also be overruled. The argument claims the trial court placed a value of $20,000 on the 10.8-acre tract purchased before marriage. Although repeating the claim multiple times in his brief, Appellant fails to point to anywhere in the record where the trial court placed a value of $20,000 on the 10.8-acre tract. It did not. What the court did was reimburse Appellant for his separate property *interest* in that land. The amount of that reimbursement was determined by the agreement of the parties. (CR 177; 4 RR 12). What the trial court found was that Appellant agreed to that valuation of his interest. (CR 200, finding 21).

As discussed above, his claim that his interest was greater than $20,000 is not supported by the evidence. The deed on which he relies shows the property was purchased with a promissory note, *not* Appellant's separate property funds beyond the $10 recited. His decision to not present any evidence at the final hearing on how that promissory note was paid precludes his complaint that the trial court erred in giving effect to the agreement that his separate *interest in the land* was $20,000. Tex. R. App. Proc. 33.1(a).

Appellant's argument to this Court fails to even acknowledge the amount recited on the deed was the promissory note used for the purchase.

22

This omission is highlighted by the very authority on which he seeks to rely. In *Gerami v. Gerami*, the first page of the opinion expressly recites the amount of community property funds used to reduce the debt on the separate property at issue there. 666 S.W. 2d 241, 242 (Tex.App.—Houston [14th Dist.] 1984, no writ). There is no such evidence here. What this Court has is a partial record, and evidence of an agreement which was not denied or controverted by Appellant. Appellant's fourth issue must be overruled.

### Reply Issue 5. *The record supports the trial court's division of the personal property.*

Appellant's fifth issue alleges the property division should be reversed because the trial court erred in the division of 3.1 percent of the community estate. The argument fails because Appellant failed to preserve his complaint, and the trial court's division is supported by both the evidence and the presumptions that arise from Appellant's failure to present a complete record.

Appellant's argument begins with the claim, with no support in the record, that the personal property ordered sold "belonged primarily to [Appellant.]"[9] The only citation to the record is the order directing sale of the personal property. That order recites the personal property is community property. (CR 74). As community property it belonged to both spouses.

---

[9] Appellant's brief at 41.

The October 31, 2024, order for sale of the personal property directed the specifically listed property to be delivered to the receiver, Hunter Warren within seven days. (CR 76). The statement that Appellant "turned over almost all" of the items is an admission he did not comply with the order. (CR 76). His brief does not address the seven items not delivered as ordered,[10] but seeks to challenge application of the order as to three items.

*The Skid-steer loader*

He first claims, as he did at trial, that the order for delivery and sale of exhibit 6, "John Deere Skid Steer" did not specifically list the bucket, forks, or grapple. As admitted in his brief, at the final hearing in February 2025, Appellant claimed that "if I had known . . . I would have taken it all with it." (4 RR 29). The argument fails for two independent reasons.

First, Appellant was on notice that he was expected to deliver the attachments that went with the skid steer when Hunter Warren filed his report on November 26, 2024, listing those items as missing, and their value. (CR 78). Yet in the three months between that report and the final hearing in late February, he did not deliver those items. He chose not to and the trial court was free to disbelieve his testimony that he would have if he had known. He

---

[10] The seven items not delivered or altered before delivery were set out in the report of Mr. Warren filed October 31, 2024 (CR 74-77). They are also listed in the factual statement above.

had known for three months.  The trial court did not abuse its discretion in charging the value of those against his distribution.

The second reason Appellant's argument fails is the presumption that property possessed at dissolution of marriage is presumed to be community property. Tex. Fam. Code § 3.003(a).  A spouse seeking to overcome that presumption must do so by clear and convincing evidence.  Tex. Fam. Code § 3.003(b). There is no evidence that only the skid steer loader was community property but the attachments were not.  Because there was no evidence to overcome the presumption, the attachments he withheld must be presumed to be community property and the trial court did not err in charging the value of those items against his distribution.

Appellant has also failed to address or overcome the presumption that the missing portion of the record, which included testimony on the character of the property, and formed the basis of the order for sale (CR 76), supports the trial court's order. *Richards*, 969 S.W.2d at 133.

*Kubota Tractor*

Appellant makes the same argument with regard to his removal of the loader from the tractor.  He fallaciously argues, by citing to a web site outside the record, that tractors are not necessarily sold with a loader, so it must not have been within the scope of the trial court's order to deliver personal

25

property to the receiver. The argument is fallacious because it is irrelevant whether loaders are part of a new tractor. What is relevant is whether property possessed during marriage was community property subject to division.

Appellant's own testimony was that he had installed the loader the year before the final hearing. (4 RR 30). That necessarily means both that it was installed during the marriage and it was property possessed at dissolution. Under section 3.003 the loader was presumed to be community property and Appellant failed to present any evidence the loader was separate because it was owned prior to marriage or acquired by gift, devise or descent. Tex. Fam. Code § 3.001. Having failed to overcome the presumption of community property, Appellant's removal of the loader before delivering the tractor failed to comply with the order for the sale of community personal property. The trial court did not err in assessing the value of the loader and repair costs against Appellant.

*The Shop Door*

The third item of personal property about which Appellant complains is a shop door. There is no dispute that the order for the sale of personal property included the shop door. (CR 76). The receivers' report simply states that appellant admitted having installed the door had his shop. (CR 83). The record is not a model of clarity, but it supports the inference that it had not

been installed at the time of the September 2024 hearing on personal property and was installed before the receiver's report in November 2024.

Appellant admits the trial court did not require it be removed but would "tally the value of it, and then I'll deal with that." (3 RR 12). That is exactly what the final order did. This did not, as Appellant now contends "penalize" him for failing to deliver the item, but made an allocation of the proceeds that accounted for the receiver's inability to sell that community property item. This allocation did not make the trial court's division of the community property unjust as he contends.

Appellant's fifth issue should be overruled.

**Reply Issue 6. _Appellant presented no evidence the trial court divested him of any separate property welding equipment._**

Appellant's sixth issue claims that the trial court divested Appellant of the "value of" separate property welding equipment. His argument in support however, starts with discussing his alteration of the tires on the welding truck. While his brief says the receiver did not place a value on the difference between the original tires and those on the truck when delivered, his report shows otherwise. The receiver's report appearing on page 80 of the clerk's record shows the cost to replace the tires in poor condition was $1,200. (CR 80).

Appellant's testimony indicates why tire replacement was justified to maintain the value of the truck. In telling the court he changed the tires because *one* had a bulge, the ones he put on were "not mud tires, but they were good street tires."[11] (4 RR 30). It takes no specialized knowledge to understand that the reason a welding truck in a rural county would have off road tires would be to reach locations to perform work. A welding truck with street tires would have less value in that county.

The remainder of his complaint is the trial court deducting the value of the welding equipment removed from the truck after it was ordered sold. (4 RR 39). Appellant's argument is that his testimony establishes that the equipment was his separate property.[12] What the record shows is that his testimony contains conflicts the trial court had discretion to resolve against him.

Appellant did not present any testimony on direct that any equipment he removed was his separate property. (4 RR 21-34). When asked on cross-examination about the value of the welding leads that had been removed Appellant's testimony was "Those things are about ten years old. . ." (4 RR

---

[11] The receiver told the court the tires were in poor condition. (CR 80).
[12] Appellant brief at 48.

37). If that was true, they would have been purchased during the parties' thirteen-year marriage. (CR 6).

When asked about other equipment Appellant's testimony was that at the time of the marriage he "had gauges, I had welding leads, I had torches." (4 RR 38-39). He did *not* testify that the gauges, leads and torches that were removed from the truck were the ones he had prior to marriage. Without addressing this testimony, Appellant points to his non-responsive answer when asked about payment for the removed equipment. His response was "it was mine prior to marriage." Appellant now argues that conclusively established all the equipment removed from the truck was separate property.

It is fundamental that the finder of fact is the exclusive judge of the credibility of witnesses and weight to be given their testimony. *City of Keller v. Wilson*, 168 S.W.3d 802, 833 (Tex. 2005). A factfinder can believe some, all, or none of a witness's testimony. *Gonzalez v Gonzalez*, No. 04-23-00066-CV (Tex.App.—San Antonio, April 16, 2025, no pet.)(memorandum op.). Here the court not only had Appellant's inconsistent testimony on the character of the removed equipment, it also heard evidence on Appellant's consistent disregard of the court's order concerning the sale of personal property. The court was free to consider that evidence in assessing Appellant's credibility on whether the statement cited above established that

the equipment removed from the welding truck was Appellant's separate property.   Appellant's sixth issue should be overruled.

***Reply Issue 7.   The trial court did not abuse its discretion in awarding attorney's fees to Appellee.***

Appellant's seventh issue assigns error to the trial court's award of attorneys fees to Appellee.  His argument rests on his contention that the trial court awarded attorney's fees based on Appellant's failure to settle the case, and his conduct at mediation.  The argument has no support in the record.

The very statement on which he seeks to rely shows the opposite.   The full statement, made while scheduling the final hearing, was:

> This is just unnecessarily complicated, and I know it's not you two, but these parties out here have just made it just astronomically complicated. I gave them an opportunity through mediation, through that full morning of that last hearing, we negotiated to trade what they wanted to trade, and here we are.

(3 RR 15).  Nothing in that statement even hints at attributing the failure to settle to Appellant.  It shows any frustration was with both parties.

The same is true with regard to Appellant's claim that the trial court was somehow aware of Appellant's conduct during the mediation.  There is absolutely nothing in the record that indicates the trial court had any knowledge about what occurred during mediation other than the failure to

reach an agreement. The record affirmatively shows that is the only information provided to the trial court. (4 RR 33).

What the record shows is that the trial court considered Appellant's "conduct, and misleading the Court, not following directions, making this case a lot harder than it had to be[.]" (4 RR 44). The record supports this finding. It shows Appellant's gamesmanship in refusing to deliver the personal property as ordered by the trial court (CR 74), and excuses for that failure. The record shows Appellant failed to produce his tax returns even after years of litigation prompting an admonition from the court. At the December 6, 2024, hearing, the following exchange occurred:

> THE COURT: So, over $10,000. Mr. Williams, do you want to pay $10,000 to her for her attorney's fees?
>
> MR. WILLIAMS: No, sir, I do not.
>
> THE COURT: All right. What part of my orders are unclear to you when I say get your income, and produce it?
>
> MR. WILLIAMS: I did, sir. I got all my paycheck stubs for the last six, or eight weeks.
>
> THE COURT: And your tax returns, and all your income.
>
> MR. WILLIAMS: I did not realize that I had to have my tax returns.

(3 RR 8-9)

The trial court experienced this feigned ignorance of his obligations in the litigation when Appellant contended he did not know he was obligated to

31

deliver all of the personal community property within the trial court's order. (CR 76; 4 RR 29). Even on appeal, without addressing the character of the property he failed to deliver, Appellant contends his disregard of the orders was not a violation of the order. The trial court did not err in holding otherwise.

The records supports the trial court's award of attorneys fees[13] to appellee. Appellant's seventh issue should be overruled.

## PRAYER FOR RELIEF

Appellant prays this court overrule each of Appellant's issues, affirm the judgement of the trial court and assess costs against Appellant.

Respectfully submitted:

_/s/  Clint Sare_____
Clint F. Sare
Texas Bar Num. 00788354
P.O. Box 1694
Bryan Texas, 77806
cfs@sarelaw.com
(979) 822-1505

Counsel for Tracy Leann Williams

---

[13] The trial court did not award her conditional attorney's fees for defending this appeal.

## CERTIFICATE OF COMPLIANCE
### WITH BRIEF LIMITATIONS AND SERVICE

I certify the foregoing document does not exceed the word count limitation of Rule of Appellate Procedure 9.4(i) based on the computer software word count of 6,996 words.

I certify a copy of appellant's brief was served on Susan Clothier counsel for Terry Brent Willams by electronic service on October 13, 2025.

_/s/ Clint Sare_____
Clint F. Sare

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 106752620
Filing Code Description: Brief Not Requesting Oral Argument
Filing Description: Appellee's brief
Status as of 10/13/2025 10:30 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Susan J.Clouthier | | susan@clouthierlaw.com | 10/13/2025 10:00:41 AM | SENT |
| Clint F.Sare | | cfs@sarelaw.com | 10/13/2025 10:00:41 AM | SENT |